# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. ID. No. 1508019137, 1508014324 |
| | ) | |
| | ) | |
| | ) | |
| VALENCIO HINTON, | ) | |
| | ) | |
| Defendant. | ) | |

Date submitted: November 27, 2017
Date decided: January 11, 2018

## COMMISSIONER'S REPORT AND RECOMMENDATION AS TO DEFENDANT'S MOTION TO DISMISS

Christina Kontis, Esquire, Deputy Attorney General, Delaware Department of Justice, 820 N. French St. 7th Floor, Wilmington, DE, 19801. Attorney for the State.

James Turner, Esquire, Office of Defense Services, 820 N. French St. 3rd Floor, Wilmington, DE, 19801. Attorney for Defendant.

**MANNING**, Commissioner:

Pending before the Court is a motion filed by Defendant, Valencio Hinton, to dismiss the charges against him. Hinton alleges that the State's failure to restore him to competency and bring him to trial within a reasonable period of time after his arrest has violated his rights to due process and a speedy trial.[1] The State has filed a response denying this.[2] Because a motion to dismiss is case dispositive I am issuing my decision in the form of a Report and Recommendation.[3]

For the reasons that follow, it is my recommendation that Hinton's Motion be GRANTED and the charges against him be dismissed.

## Facts and Procedural History

Hinton was first arrested on August 19, 2015, for the crimes of Carrying a Concealed Deadly Weapon, Possession of a Stun gun, Loitering and Failure to Answer a Summons (two counts).[4] Hinton was released on unsecured bail. Hinton was subsequently arrested on September 3, 2015, and charged with Theft over $1,500 and Theft of a Motor Vehicle for crimes that allegedly occurred on August 18, 2015.[5] Hinton was released on $3,650.00 secured bail on September 14, 2015,

---

[1] D.I. # 42.

[2] D.I. # 43.

[3] Super. Ct. Crim. Rule 62.

[4] Cr. ID # 1508014324.

[5] Cr. ID # 1508019137.

1

and has remained out on bond since that time. Both cases were indicted on October 12, 2015.[6]

On January 8, 2016, Counsel for Hinton filed a request in case 1508014324 to have the final case review and trial continued because "more time is needed to assess [Hinton's] competency." The request was granted by the Court the same day. A similar request was granted in case 1508019137 on February 18, 2016. Both cases were again continued on March 31, 2016, at Defendant's request. On April 26, 2016, the State requested a continuance of case 1508019137 because the police officer was unavailable on the trial date. That request was granted on May 4, 2016.

On May 12, 2016, a Defense Psycho-Forensic Evaluation was filed by Defendant.[7] In the detailed 12 page report, Dr. Much opined that Hinton was not competent to stand trial due to his chronic severe psychiatric illness with psychotic symptoms. Dr. Much recommended that Hinton continue to take medication and attend outpatient treatment and counseling. Dr. Much did not foreclose the possibility that Hinton could be restored to competency at a future date. The State did not challenge Dr. Much's findings and conclusions.

---

[6] Both cases have a similar procedural history with the Court and this recommendation applies to both cases equally.

[7] D.I. # 27 (both cases).

On July 7, 2016, an office conference was held before Judge Carpenter. It is unclear from the docket exactly what transpired at the office conference. However, the State subsequently filed a Motion for Revocation of Bail as to both cases on July 11, 2016. Defendant filed a response in opposition on July 21, 2016. The State's motion was referred to Judge Carpenter but was passed on August 1, 2016. The docket indicates that "defense counsel to update court with a plan to restore the defendant's competency. Scheduled for August 16, 2016 at 9 am before Judge Carpenter on his VOP calendar."[8] There is no indication in the docket as to what, if anything, occurred during the VOP hearing on August 16, 2016.

For inexplicable reasons, a new trial scheduling order was then issued for both cases on November 22, 2016. On November 28, 2016, at final case review, the trial dates of both cases were continued and both cases placed on the Mental Health Problem Calendar, per Judge Carpenter. On July 20, 2017, defense counsel again asked for a continuance because Hinton was due to be re-evaluated the second week of July.

On September 13, 2017, Defendant filed an Updated Psycho-Forensic Evaluation for Competency report.[9] This report, also by Dr. Much, concluded that

---

[8] D.I. # 33.

[9] D.I. # 38 (both cases).

3

Hinton was still not competent to stand trial due to a major psychotic disorder—Schizoaffective Disorder, Bipolar Type. The report goes on to state that:

> [I]t is highly unlikely even with continued treatment that [Hinton] will ever acquire the requisite knowledge and judgment to meet the minimal standard for legal competence. [Hinton] continues to have ongoing psychiatric symptoms that will prevent him from ever becoming competent. He will require medication and psychotherapy to limit the likelihood of further decompensation and deterioration in functioning that could result in a possible risk of harm to himself or others.

The updated report was referred to the undersigned Commissioner on September 19, 2017. To date, the State has not sought a second opinion or moved to challenge Dr. Much's findings.

On October 16, 2017, I held a status conference regarding Hinton's cases. Although it is not reflected in the docket notes for the hearing, I discussed Dr. Much's findings with counsel and the fact that the State has no outpatient competency restoration program—and never has. The State indicated that it is not willing to drop the charges against Hinton and renewed its application to revoke bail. I indicated to the State my strong reluctance to revoke Hinton's bail solely for the purpose of incarcerating him so he could then be transferred to DPC to attend the competency restoration program located there. At the time of the hearing, Hinton was compliant with outpatient medication and voluntary treatment with Connections. Defense Counsel moved to have the case dismissed and was instructed to file an appropriate motion. At the conclusion of the hearing, I ordered that bail

4

remain the same and that Hinton continue with pre-trial supervision, continue to take all prescribed medication, and attend outpatient treatment as a condition of him remaining out on bond.

Defendant subsequently filed the instant Motion to Dismiss on November 3, 2017. The State filed its Response on November 27, 2017.

## Defendant's Motion to Dismiss

Defendant moves to dismiss the charges against him on the grounds of due process, speedy trial, and equal protection. It is unclear if Defendant is basing his claims on the federal or Delaware constitutions, or both. In any event, the State opposes Defendant's Motion and asks this Court to have Hinton continue with his treatment and be re-evaluated by Dr. Much in six months. I find the State's request to a reasonable one, but for the reasons that follow, ultimately a futile course of conduct under the circumstances.

If Hinton had been incarcerated since the date of his arrest, the Court's determination would be guided by settled case law.[10] Moreover, 11 *Del. C.* § 404(a) allows the State to hold an accused person, who by reason of mental illness or serious mental disorder, is not competent to stand trial, at the Delaware Psychiatric Center

---

[10] *See e.g. Jackson v. Indiana*, 406 U.S. 715 (1972); *Hampton v. State*, 2000 WL 33115720 (Del. Super. June 22, 2000).

5

for treatment, until the person is capable of standing trial.[11] The statute requires that the State be able to establish a *prima facie* case against the defendant in order to continue the confinement. If the State fails to establish a *prima facie* case, the court shall dismiss the charges.[12]

With that said, case law from this Court has made it clear that a defendant may not be held indefinitely pending restoration of competency to stand trial.[13] If a defendant cannot be restored to competency and brought to trial within a reasonable period of time, the State must either move to civilly commit the person pursuant to 16 *Del C.* § 5011, or the Court will dismiss the case.[14] Of course, what constitutes a "reasonable period of time" is a fact-sensitive analysis that will vary greatly from case to case.

---

[11] § 404 Confinement in Delaware Psychiatric Center of persons too mentally ill to stand trial; requiring State to prove prima facie case in such circumstances; adjustment of sentences.
(a) Whenever the court is satisfied, after hearing, that an accused person, because of mental illness or serious mental disorder, is unable to understand the nature of the proceedings against the accused, or to give evidence in the accused's own defense or to instruct counsel on the accused's own behalf, the court may order the accused person to be confined and treated in the Delaware Psychiatric Center until the accused person is capable of standing trial. However, upon motion of the defendant, the court may conduct a hearing to determine whether the State can make out a prima facie case against the defendant, and if the State fails to present sufficient evidence to constitute a prima facie case, the court shall dismiss the charge. This dismissal shall have the same effect as a judgment of acquittal.

[12] *Id.*

[13] *See State v. Goldsberry*, 2000 WL 710090 (Del. Super. Apr. 26, 2000) and *State v. Draughn*, 2016 WL 7105933 (Del. Super. Nov. 29, 2016).

[14] *Goldsberry, supra*, at *3.

6

The problem here is that Hinton is not incarcerated, and has not been, except for 11 days following his arrest on September 4, 2015. If Hinton was incarcerated, I would have long ago ordered him to DPC for competency restoration classes and awaited the results. However, as previously noted, the State of Delaware, through neither the Department of Corrections, nor the Department of Health and Social Services (the agency that runs DPC), offer any type of outpatient competency restoration program. The current restoration program is only available to defendants already in DOC custody. Although the number of defendants in Hinton's position is very small, this situation has unfortunately persisted for many years.[15]

## Speedy Trial

Hinton argues that his right to a speedy trial has been violated. For this determination, I will utilize the four-factor test established by the United States Supreme Court in *Barker v. Wingo*.[16] The four factors are: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right and (4) prejudice to the defendant.[17]

It is undisputed that the delay, in this case, is well beyond the two-year mark. Additionally, the Court will not dispute that this delay has caused some prejudice to

---

[15] Additionally, I note that none of the agencies involved in this process, DOC, DHSS and the DOJ have taken any steps to rectify this situation over the years.

[16] 407 U.S. 514 (1972).

[17] *Id.* at 530.

Hinton—he has had felony charges pending against him for over two years. Hinton's motion to dismiss, filed on November 3, 2017, is the first time that he has argued that his right to a speedy trial has been violated. However, the reason for the extended delay is the critical issue in this analysis.

Generally speaking, the State bears the burden to establish a defendant's competence to stand trial by a preponderance of the evidence.[18] Concomitant with this standard is the State's compelling interest in bringing a defendant to trial.[19] Thus, the onus is necessarily on the State to provide a mechanism for competency restoration—something it does in most instances, but unfortunately, not for non-incarcerated defendants.

Title 11 *Del. C.* § 404 provides that "the court *may* order the accused person to be confined and treated in the Delaware Psychiatric Center until the accused person is capable of standing trial."[20] Thus, it is within the Court's discretion to revoke Hinton's bail and order him to DPC. In this case, however, I have declined to order Hinton confined and transferred to DPC for three reasons: 1) I find it unduly punitive to incarcerate a mentally ill person for the sole purpose of competency restoration, 2) based on the reports by Dr. Much, I have no reasonable expectation

---

[18] *See Diaz v. State*, 508 A.2d 861, 863 (1984).

[19] *See Sell v. U.S.*, 539 U.S. 166 (2003).

[20] Emphasis added.

that Hinton will ever be restored to competency and, 3) to date, based on the record before me, Hinton has been complaint with all conditions of his bond and does not appear to represent a flight risk or threat to the community justifying a modification of his bond. In short, sending Hinton to DPC at this point in time would be futile. At this juncture, the fact that Hinton is not incarcerated is almost irrelevant to the analysis. Even assuming that the State could continue to make a *prima facie* showing under § 404 as discussed above, there is no reason to believe that the State could *ever* bring Hinton to trial.

Balancing the four *Barker v. Wingo* factors, I find that the reason for the delay—the State's inaction and ultimate inability to restore Hinton to competency—outweighs all other factors at this point in time. Therefore, I am recommending that the charges against him in both cases be dismissed. Furthermore, if the State feels that Hinton is sufficiently dangerous, then the State is always free to pursue a civil commitment under 16 *Del C.* § 5011.

**IT IS SO RECOMMENDED**

Commissioner

oc:  Prothonotary
cc:  all counsel via e-mail

9